Clifford Leroy DOWNING, Appellee,

v.

**IOWA DEPARTMENT OF
TRANSPORTATION,**
Appellant.

No. 86–1539.

Supreme Court of Iowa.

Nov. 25, 1987.

Thomas J. Miller, Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellant.

Dennis D. Jasper of Stafne, Lewis & Jasper, Bettendorf, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

In this judicial review proceeding we must decide whether the district court erred in rescinding the revocation of Clifford Leroy Downing's license to drive. The Iowa Department of Transportation (DOT) found that Downing had refused to take a urine test requested by a police officer who suspected him of operating a motor vehicle while under the influence of alcohol (OWI). *See* Iowa Code § 321B.4

(1985).[1] After a summary revocation by the police officer and an administrative hearing, the DOT revoked Downing's license for 240 days under Iowa Code section 321B.13.[2] The revocation was upheld on administrative appeal.

The district court, however, rescinded the revocation because the police officer, at the time of the summary revocation, had failed to give Downing the temporary license to which he was entitled under section 321B.13. Although the court found substantial evidence of Downing's refusal, it ordered rescission of the revocation because it found the officer's mistake had violated Downing's due process rights under a mandatory provision of the statute.

The DOT now argues its decision, supported by substantial evidence, should be upheld. It contends that because Downing cannot show that the outcome of the revocation proceedings was prejudiced by violation of the merely directory temporary license provision, the district court had no ground for rescinding the revocation.

Contrary to Downing's assertion on appeal, we agree with the district court that substantial evidence shows Downing refused the urine test. But because we do not agree the officer's failure to issue a temporary license violated a mandatory provision of the relevant statute, and because Downing showed no prejudice due to this failure, we reverse and uphold the revocation decision of the DOT.

The DOT's findings of fact show Downing was injured in an automobile accident late in the night on August 17, 1984, and was then taken to a hospital. There, at about 1 a.m. on August 18, a police officer who was investigating the accident interviewed Downing. While Downing was describing his injuries, the officer smelled a strong odor of alcohol on Downing's breath and noticed his speech was slurred. Downing admitted he had been drinking and had been driving alone.

After Downing failed field sobriety tests, the officer arrested him for OWI. Because the officer had reasonable grounds to believe Downing had been operating a motor vehicle while under the influence of alcohol, he read Downing the implied consent advisory and requested a blood test. *See* Iowa Code § 321B.4(1). Downing refused to take the blood test, which he could do without fear of revocation, and signed an implied consent form attesting to his refus-

---

**1.** Iowa Code § 321B.4 provides in pertinent part:

1. Any person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321.281 is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section.... [T]he test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321.281, and if any of the following conditions exist:
a. A peace officer has lawfully placed the person under arrest for violation of section 321.281.
b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
....
2. ... A refusal to submit to a chemical test of blood is not deemed a refusal to submit, but in that case, the peace officer shall then determine which one of the other three substances shall be tested and shall offer the test.

Chapter 321B was repealed by 1986 Acts ch. 1220, § 50, and was replaced by ch. 321J.

**2.** Iowa Code § 321B.13 provides in pertinent part: .

If a person refuses to submit to the chemical testing, a test shall not be given, but the department, upon the receipt of a sworn report of the peace officer that the officer had reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, that specified conditions existed for chemical testing pursuant to section 321B.4, and that the person had refused to submit to the chemical testing, shall revoke the person's license or permit to drive ... for a period of two hundred forty days.... [A] peace officer offering or directing the administration of a chemical test may serve immediate notice of intention to revoke and of revocation on a person who refuses to permit chemical testing. If the peace officer serves that immediate notice, the peace officer shall take the Iowa license or permit of the driver, if any, and issue a temporary license effective for only twenty days.

al. *See id.* at § 321B.4(2). The officer immediately requested a urine test, *see id.,* which Downing also refused. Downing claims that because of his injuries he does not remember refusing the urine test or signing the implied consent form attesting to this second refusal. Nevertheless, the officer notified Downing that his license was being revoked for 240 days. *See id.* at § 321B.13. The officer, however, failed to issue Downing the temporary license for which section 321B.13 provides upon summary revocation.

Downing contacted the DOT about a temporary license and received one on August 24. Downing drove neither during the six days between the summary revocation and receipt of the temporary license, nor, because of legal uncertainties about his driving privileges, during the following seven days. Downing testified he had experienced difficulties with his employment and domestic duties during the thirteen days he did not drive. The DOT, in its decision, gave Downing thirteen days of credit toward his revocation period.

I. *Scope of Review.*

Our review of the DOT revocation decision is governed by the Iowa Administrative Procedure Act (IAPA). *Taylor v. Department of Transp.,* 260 N.W.2d 521, 522 (Iowa 1977); Iowa Code §§ 321B.27, 17A.20.

> "When, under the IAPA, this court reviews a district court decision on the validity of an agency action, we ask only whether the district court has correctly applied the law." If, after applying the standards of Iowa Code section 17A.19(8) to the agency action, our conclusion is the same as that of the district court, we must affirm.

*Richards v. Iowa Dep't of Revenue,* 414 N.W.2d 344, 350 (Iowa 1987) (citations omitted); *accord Norland v. Iowa Dep't of Job Serv.,* 412 N.W.2d 904, 908 (Iowa 1987); *Jackson County Pub. Hosp. v. PERB,* 280 N.W.2d 426, 429–30 (Iowa 1979). If, however, we disagree with the district court's conclusion, reversal may be required. *Jackson County Pub. Hosp.,* 280 N.W.2d at 430.

II. *Substantial Evidence of Refusal.*

On appeal, Downing questions whether substantial evidence supports the DOT's finding that he legally refused the urine test. Downing asserts that because of his injuries he was unable to make an "informed" decision on whether to take the urine test and, therefore, should not be held legally accountable for his refusal.

Under the substantial evidence rule of Iowa Code section 17A.19(8)(f), "we determine if there is substantial evidence in the record as a whole to support the decision of the agency." *McCrea v. Iowa Dep't of Transp.,* 336 N.W.2d 427, 429 (Iowa 1983). If so, we affirm the agency's decision. *See* Iowa Code § 17A.19(8).

Compliance with the statutory provision for chemical intoxication testing, section 321B.4, is a question of fact on which the licensee has the burden of proof. *See McCrea,* 336 N.W.2d at 429–30. The fact finder here, the DOT, was entitled to presume Downing made an "informed" decision not to comply. *See State v. Knous,* 313 N.W.2d 510, 512 (Iowa 1981). When this presumption is challenged, the DOT can find that a legal refusal to comply exists if the "totality of the circumstances" shows the decision was voluntary; a "knowing and intelligent" decision is not necessary. *See id.* "In general, we give [such] agency fact-findings deference because of the presumably greater expertise an agency has over matters within its purview." *Richards,* 414 N.W.2d at 350; *accord Norland,* 412 N.W.2d at 908.

In Downing's case, we need not give the DOT much deference to find substantial evidence that supports its finding regarding Downing's urine test refusal. To begin, Downing spoke coherently to the arresting officer at the time the urine test was requested and signed the implied consent form twice, to indicate his refusals of both blood and urine tests. Further, Downing testified that "I refused the test 'cause I had about six [beers] ... that evening." Downing's words, acts, and overall conduct, viewed objectively, clearly manifest a voluntary unwillingness to sub-

mit to the urine test, unaffected by his injuries. Such behavior indicates he did not legally comply with the statute. *See McCrea*, 336 N.W.2d at 430. The district court was correct in finding that substantial evidence supports the DOT's determination on this issue.

III. *Failure to Issue Temporary License as Ground for Rescinding Revocation.*

Next, we must decide whether the district court erred by rescinding the revocation. The court based this decision on the arresting officer's failure to perform the supposedly mandatory duty of issuing a temporary license at the time of summary revocation. The court said this duty is "essential to the due process procedure established by the legislature." Because we find error in the district court's decision, we reverse.

A. *Whether issuance requirement is mandatory or directory.* The first issue facing us is whether the statutory provision concerning the temporary license is mandatory or directory. Iowa Code section 321B.13 states that the revoking officer "*shall* . . . issue a temporary license." (Emphasis added.) To decide whether this statutory provision is mandatory or directory, we look to the purpose the legislature intended it to serve. *Taylor*, 260 N.W.2d at 522. If the duty imposed by the provision is essential to the main objective of the whole statute, the provision is mandatory, and failure to perform the duty will invalidate subsequent proceedings under the statute. *Id.* at 522–23. But when the duty is not essential to the main statutory objective, the provision is directory, and failure to perform the duty under it will not affect the validity of subsequent proceedings unless prejudice is shown. *Id.* at 523.

The DOT argues the duty to issue a temporary license under section 321B.13 is merely directory because it is not essential to the main purpose of chapter 321B, which is "to promote public safety by removing dangerous drivers from the highways,"

*Taylor*, 260 N.W.2d at 523. Downing, however, contends the duty is mandatory because it is essential to the due process scheme the legislature set up to assure that licenses are not revoked without a fair hearing.

Our cases, in addition to *Taylor*, support the DOT's contention that the main purpose of chapter 321B is to remove dangerous, intoxicated drivers from the public highways. *See Knous*, 313 N.W.2d at 511 (The "statute 'was enacted to help reduce the appalling number of highway deaths resulting in part . . . from intoxicated drivers.' "); *State v. Wallin*, 195 N.W.2d 95, 96 (Iowa 1972); *Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967). Moreover, the legislature's "declaration of policy" in section 321B.1 makes it clear that such a purpose was intended for the statute: "this chapter is necessary to aid the enforcement of laws prohibiting operation of a motor vehicle while under the influence of an alcoholic beverage. . . ."

Because this main legislative goal of removing dangerous, intoxicated drivers from the highways can still be attained when the issuance of a temporary license is delayed, we hold that the temporary license provision is directory and that prejudice must be shown before violation of the provision can be a ground for rescission of a revocation. *Cf. McFee v. Iowa Dep't of Transp.*, 400 N.W.2d 578, 581 (Iowa 1987) (delay in administrative proceedings without showing of actual prejudice will not mandate reversal of final agency action); *Pietig v. Iowa Dep't of Transp.*, 385 N.W.2d 251, 253 (Iowa 1986) (requirement to "forthwith" revoke license under section 321.209 is directory only, so licensee could not avoid revocation absent showing of prejudice); *Taylor*, 260 N.W.2d at 523 (because this legislative goal can still be attained when hearing is late, hearing time provision is directory). To adopt a standard of rescission based on nonprejudicial delay "would promote the dangerous driver's rights[3] over those of the general pub-

---

**3.** We note that a driver's due process rights under the United States Constitution are not

violated even if the driver has no driving privileges at all for a period of time between the

lic and would frustrate the legislature's strongly established goal of removing dangerous drivers from the highways." *McFee*, 400 N.W.2d at 581; *accord Taylor*, 260 N.W.2d at 523.

B. *Whether delay in issuance was prejudicial.* Because we have found the temporary license provision to be directory, we can now uphold the rescission only if Downing has met his burden of showing prejudice resulting from failure to issue the temporary license immediately after summary revocation. As we said in *McFee*, "when a licensee asserts unreasonable delay as a basis for [rescission] the licensee bears the burden to show ... that the delay actually prejudiced his or her substantial rights. Prejudice will not be presumed." 400 N.W.2d at 581 (citation omitted); *see also Pietig*, 385 N.W.2d at 253 (absent a showing of prejudice, licensee may not avoid revocation when violated statute was directory).

Downing argues prejudice is shown by the difficulties he encountered, due to his lack of driving privileges, in performing his employment and domestic duties. He also points out that he incurred additional attorney fees because his attorney had to help him obtain the temporary permit that should have been issued at the time of summary revocation.

The DOT's argument regarding prejudice goes off on a different tack. Instead of viewing "prejudice" as any difficulty encountered by the licensee as a result of the improper omission, the DOT contends prejudice should be seen as damage to the integrity and outcome of the fact-finding process due to the omission.

In criminal cases we have already used such an "outcome" analysis to determine prejudice. In *Taylor v. State*, we said that to prove prejudice, " '[t]he defendant must show that there is a reasonable probability that, but for [the supposed error], the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " 352 N.W.2d 683, 685 (Iowa 1984) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 699 (1984)); *cf. State v. Smith*, 282 N.W.2d 138, 141 (Iowa 1979) (this court has "long history" of not reversing on ground of procedural error unless error "prejudiced the complaining party or deprived him or her of full opportunity to make defense to the charge").

Courts in other jurisdictions have adopted the outcome analysis of prejudice in OWI and license revocation cases. In an OWI criminal proceeding, one court said reversal of a conviction should occur "if there is a reasonable possibility that the error contributed to the result." *State v. Bolstad*, 124 Wis.2d 576, 589–90, 370 N.W.2d 257, 263–64 (1985) (citing *Strickland* test as "instructive"); *accord State v. Albright*, 98 Wis.2d 663, 677, 298 N.W.2d 196, 204 (Ct.App.1980) (substantial prejudice occurs and new trial should be granted if "a different result would probably have been reached absent errors at trial"); *cf. State v. Durnell*, 16 Wash.App. 500, 502, 558 P.2d 252, 253–54 (1976) (lack of counsel at license revocation proceeding did not prejudice subsequent related criminal proceeding because alleged error in earlier case did not substantially affect outcome of later case).

Another court has used the outcome analysis in the context of a civil "implied consent" proceeding similar to the one before us now. The court said a license revocation based on refusal to submit to a blood-alcohol test should not be rescinded when "it was not shown that the [challenged administrative] delay had a significant impact on the outcome of the revocation hearing." *Fitzgerald v. Commissioner of Pub. Safety*, 356 N.W.2d 843, 845 (Minn.App.1984); *cf. Weise v. Commissioner of Pub. Safety*, 370 N.W.2d 676, 678 (Minn.App.1985) (trial court decision at im-

---

summary revocation and an administrative hearing. *See Dixon v. Love*, 431 U.S. 105,`110, 114–15, 97 S.Ct. 1723, 1726, 1728–29, 52 L.Ed.2d 172, 178, 181 (1977) (summary revocation permissible under due process clause though no driving privileges allowed unless restricted permit is issued later); *accord Mackey v. Montrym*,

443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321, 331 (1979); *Heddan v. Dirkswager*, 336 N.W.2d 54, 58–63 (Minn.1983). Iowa's statutory scheme provides for a postrevocation hearing by the DOT within twenty days after receipt of a written request for the hearing from the affected driver. *See* Iowa Code § 321B.26.

plied consent hearing should be reversed only when the challenged action "prejudices the outcome of the trial"); *Beyer v. Commissioner of Pub. Safety*, 358 N.W.2d 713, 715 (Minn.App.1984).

We are persuaded by these cases that prejudice is proven only by showing a reasonable probability that the alleged error affected the outcome of the case. A reasonable probability is one sufficient to undermine confidence in the outcome. *Taylor*, 352 N.W.2d at 685.

We certainly do not condone the error made by the arresting officer in Downing's case. *See McFee*, 400 N.W.2d at 581; *Taylor*, 260 N.W.2d at 523. Downing unfortunately encountered difficulties with employment and domestic duties that he may not have had absent the error. Further, the legislature did provide for issuance of a temporary license at the time of summary revocation.

But it would seem contrary to the administration of justice for us to allow rescission of this revocation when the error did not affect an essential purpose of the relevant statute, did not impinge on Downing's constitutional rights, and did not distort the outcome of the revocation proceeding. As to this last possibility, Downing's attorney admitted at oral argument that the officer's error did not affect the outcome of the revocation proceeding, and nothing in the briefs or the record suggests otherwise. No prejudice occurred here.

IV. *Disposition.*

We agree with the district court that substantial evidence in the record as a whole shows Downing refused the requested urine test. But because issuance of a temporary license is a merely directory provision of chapter 321B, and because delay in the issuance did not prejudice the outcome of the revocation proceeding, we reverse the decision of the district court and uphold the decision of the DOT to revoke Downing's driving privileges.

REVERSED.