# IN THE COURT OF APPEALS OF IOWA

No. 19-1801
Filed February 3, 2021


**BRIANNA BLOMBERG,**
     Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION,**
     Defendant-Appellee.
_____


     Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott, Judge.


     Brianna Blomberg appeals the district court order on judicial review affirming the Iowa Department of Transportation's decision to bar her driving privileges for three years as a habitual offender.  **AFFIRMED.**


     Kendra M. Olson, Sioux City, for appellant.

     Thomas J. Miller, Attorney General, and Michelle E. Rabe, Assistant Attorney General, for appellee.


     Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

Crying foul, Brianna Blomberg urges that a three-year delay in providing notice of her habitual offender status must result in no revocation of her driving privileges. In December 2018, Blomberg received an Iowa Department of Transportation (IDOT) notice of revocation of license sanction for being a habitual offender. But the Plymouth County Clerk's (county) mistake in certifying to the IDOT that a driving while barred conviction was entered on December 14, 2018, instead of June 19, 2015—the actual date—caused a delay of almost three years in starting the revocation period.[1] Blomberg asserts that delay caused her prejudice. The IDOT maintains that although there was a mistake creating an administrative delay in the sanction period, that delay did not prejudice a substantial right of Blomberg. We agree. We also agree that the doctrine of laches cannot operate to bar the revocation.

**Factual and Procedural Background.**

First, both parties agree that three convictions qualified Blomberg for habitual offender status under Iowa Code section 321.555.[2] The certified abstract

---

[1] A February 5, 2019 email correspondence from the clerk to the administrative law judge stated: "The notice of conviction should reflect the date of this disposition order (6/19/15). There may have been some sort of a hiccup in the system on our end because the notice of conviction didn't get sent to the DOT until 12/15/18." Under Iowa Code section 321.491(2)(a) (2019), the clerk of court must immediately forward to the IDOT an abstract of record of a conviction under chapter 321 within ten days after conviction.

[2] Iowa Code section 321.555 states:

As used in this section and sections 321.556 through 321.562, "habitual offender" means any person who has accumulated convictions for separate and distinct offenses described in subsection 1, 2, or 3, committed after July 1, 1974, for which final convictions have been rendered, as follows:

of Blomberg's driving record shows those qualifying convictions as operating while intoxicated (January 2012), driving while suspended (Plymouth County, June 2015), and driving while suspended (Woodbury County, January 2016). Blomberg argues if the notice had been timely, the revocation likely would have started in early 2016 and ended in early 2019. And if timely, the revocation term would have coincided with a time—2015 to 2018—when she was not driving because of a health issue.[3] She simply states, if the county had not made the error, Blomberg would have already served her sanction when she was not driving for medical reasons.

Once Blomberg received the notice, she timely appealed the IDOT license sanction and participated in an administrative hearing before an administrative law judge (ALJ). After the January 24 phone hearing but before the ruling, the county clarified the correct date of the second conviction to the ALJ. But the ALJ upheld Blomberg's habitual offender status and the three-year license revocation decision of the IDOT. Blomberg appealed from the ALJ decision to the IDOT. In the final agency action, after incorporating the finding of facts from the ALJ decision, the reviewing officer determined a license bar under the habitual offender statute was

---

1. Three or more of the following offenses, either singularly or in combination, within a six-year period:
. . . .
b. Operating a motor vehicle in violation of section 321J.2 or its predecessor statute.
c. Driving a motor vehicle while the person's driver's license is suspended, denied, revoked, or barred.

[3] Blomberg discovered she had epilepsy when she had a motor vehicle accident, and by doctor's medical order she could not drive starting in December 2015 and ending in August 2018.

mandatory and Blomberg failed to show that the delay of the revocation prejudiced her. The decision of the ALJ was affirmed.

Blomberg petitioned for judicial review. Raising the delay in notice of the revocation, Blomberg advocated that the laches doctrine prevented enforcement of the habitual offender statute. She also asserted the decision of the IDOT was unreasonable, arbitrary, capricious, or an abuse of discretion. The district court found that even though Blomberg proved an administrative delay, she failed to prove prejudice of a substantial right. The district court reasoned "whether the conviction was reported in 2015 or 2018, the [IDOT] would have imposed a 3 year bar on [Blomberg's] [driver's] license." The district court affirmed the final agency decision.

**Standard of Review.**

Iowa Code chapter 17A governs judicial review of an agency decision. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). Under the Act, we may only interfere with the commissioner's decision if it is erroneous under one of the grounds enumerated in the statute and a party's substantial rights have been prejudiced. *See id.*; *see also* Iowa Code § 17A.19(10). Like the district court, we review an agency's decision for errors of law and do not exercise a de novo review. *Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853, 856 (Iowa 1993). Under Iowa Code section 17A.19(10), our standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review. *See Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006).

There is no dispute over these facts. The dispute comes with how the facts are applied to the law to arrive at the ultimate conclusion—the three-year

revocation of license. *See Burton*, 813 N.W.2d at 259 ("[I]f . . . the claim of error lies with the *ultimate conclusion* reached, then the challenge is to the agency's application of the law to the facts . . . ." (quoting *Meyer*, 710 N.W.2d at 219)). With this type of error alleged, we will reverse the agency's decision only if it is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(m); *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 558 (Iowa 2010).

**License Revocation Delay, Prejudice and Laches.**

*Revocation delay and prejudice.* Once the IDOT determines a person is a habitual offender, it "shall immediately notify the person in writing and afford the licensee an opportunity for a hearing." Iowa Code § 321.556(1). Blomberg's burden is to show (1) there was an administrative delay and (2) the delay prejudiced her substantial rights. *McFee v. Iowa Dep't of Transp.*, 400 N.W.2d 578, 581 (Iowa 1987) (finding passage of two and one-half years from arrest to administrative revocation proceeding was not inherently prejudicial). Following the January 2016 conviction, which was the third violation that triggered the habitual offender status, the notice was not issued until December 2018. Thus, we can easily find that there was an administrative delay. So the question becomes, did the delay prejudice a substantial right of Blomberg? Blomberg complains that the mere passage of time is inherently prejudicial. But *McFee* taught

> [W]e agree with McFee that at times unreasonable delay in concluding administrative proceedings could result in actual prejudice to the licensee. However, absent a showing by the licensee of unreasonable delay resulting in actual prejudice, we decline to hold the mere passage of time in and of itself violates McFee's substantial rights and mandates reversal of final agency action. To adopt such a standard would promote the dangerous driver's rights over those of the general public and would frustrate the legislature's strongly established goal of removing dangerous

drivers from the highways.  Thus, . . . we conclude actual prejudice resulting from unreasonable delay must be shown by McFee before reversal and dismissal will be required.

400 N.W.2d at 581 (citations omitted).  As noted in *McFee,* "delay is unfortunate and is not to be condoned."  *Id.*  But absent a showing by Blomberg that the delay of years caused actual prejudice to her, we cannot hold that mere passage of time by itself violates Blomberg's substantial rights and requires a reversal of the final agency decision.  Prejudice will not be presumed.  *See Downing v. Iowa Dep't of Transp.*, 415 N.W.2d 625, 629 (Iowa 1987).  The district court recognized the negative impact of the delay to Blomberg because with the "medical restrictions in place . . . the bar period would have expired by the time it was imposed."  But we use an "outcome" analysis to determine prejudice.  *Id.* at 629-30.  So Blomberg must show "a reasonable probability that, but for [the supposed error], the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 629. (alteration in original) (citations omitted).  We find that if the notice had been sent earlier, the outcome, a three-year revocation, would have been the same.

Although she could not drive due to medical issues, Blomberg's license was not revoked because of her poor driving record over the 2015-2018 years her revocation might have occurred.  The coincidence that Blomberg's medical condition inhibited her ability to drive during the years 2015 to 2018 does not lessen the goal to achieve the legislature's statutory purpose.  *See id.* at 628 (noting the legislative goal of removing dangerous drivers "can still be attained when the issuance of a temporary license is delayed").  The late imposition of the revocation did not impact the essential purpose of the statute, did not impinge any of

Blomberg's rights, and did not distort the outcome of the revocation proceeding. *See id.* at 630. In other words, but for the delay, the decision to revoke for a three-year term would have been the same.

*Laches.* In another vein, the ALJ determined that "[t]he relevant law gives neither the [IDOT] nor an [ALJ] discretion to make exceptions to Iowa Code § 321.556 once it has been established that a person is a habitual offender." Section 321.556(4) provides, "If the department's findings and conclusions are that the person is a habitual offender, the department shall issue an order prohibiting the person from operating a motor vehicle on the highways of this state for the period specified in section 321.560."[4] Blomberg raised the doctrine of laches to avoid or lessen the revocation. The IDOT's reviewing officer addressed Blomberg's laches argument, stating:

> Finally, regarding the laches doctrine, "the party asserting that affirmative defense has the burden to establish its essential elements by clear, convincing and satisfactory evidence." [Blomberg] maintains she did not drive, because of a health issue, from December 10, 2015, until August of 2018. Putting aside the fact that her driving record shows a citation for no driver's license on March 5, 2016, I understand [Blomberg] would have preferred to serve the bar between 2015 and 2018, but inconvenience does not constitute prejudice. In previous driver's license matters, if a paperwork error did not affect an essential purpose of the relevant statute, impinge on constitutional rights, and distort the outcome of the revocation proceeding, prejudice was not found. Since [Blomberg] never established that any delay was prejudicial, laches does not apply here.

---

[4] Iowa Code section 321.560 allows a period of license revocation for a habitual offender to extend "for a period of not less than two years nor more than six years from the date of judgment."

(Citations omitted.)  The district court agreed.  But relying on case law where a licensee obtained a reduction of the revocation period even without showing prejudice, Blomberg frames her argument with calculations:

> [Blomberg] request[ed] that the district court consider that her bar should have begun February 21, 2016 (a month after the last of the three convictions for which she was eventually barred) and that she be given credit toward the three-year bar for the period from February 21, 2016 until August 15, 2018 when she got her license back—936 days.  She asked that she be given credit toward her bar from April 26, 2019 to the time of the judicial review.  Three years from February 21, 2016 would be 1096 days (including Feb. 29, 2016).  [Blomberg] asked that the court order that her bar end October 3, 2019, which was the date that she would have gone a total of 1096 days without driving since February 21, 2016.  Since that date has passed, she now asks that her bar from driving be lifted immediately.

In *State v. Moret*, 504 N.W.2d 452, 453-54 (Iowa 1993) (*Moret II*), the supreme court clarified the application of laches in a habitual offender proceeding by stating:

> Laches is an equitable doctrine.  Essentially, the doctrine applies to those situations in which a party has delayed prosecution of a claim to the prejudice of the party against whom the claim is made.
> In *Moret I*,[5] we noted that in *Peterson* we implicitly approved the use of laches as a defense in habitual offender proceedings.  We did not, however, say that laches could be used as a complete defense.  What we did say was that "[i]n determining the period of time the habitual offender is to be barred, . . . it is appropriate for the district judge to consider the time at which the petition was brought by the State in relation to the dates of convictions as shown on the abstract."
> In short, what we were saying is that laches is a partial, not a complete, defense.

(Alterations in original) (citations omitted).  Previously, an abstract of Moret's driving record established he was a habitual offender and, although there was a delay of two and one-half years before the revocation was ordered, the supreme

---

[5] *State v. Moret*, 486 N.W.2d 589 (Iowa 1992).

court held Moret failed to prove he was prejudiced by the delay. *Moret I*, 486 N.W.2d at 592. That said, the court addressed the unfairness of the delay

> Mr. Moret, through his testimony, has already established that he has been unable to drive for the past year and a half. Now, if he is found to be an habitual offender, the law requires a minimum suspension of an additional two years. And we think that is very unfair to Mr. Moret since he has already been suspended for a year and a half. Had the Iowa Department of Transportation in a timely fashion initiated these proceedings as early as a year ago, the suspension could be running concurrently and he would not be penalized by this further bar at the end, that would not be tacked on to the end, as they seek to do now.

*Id.* at 590. The district court judge then set the revocation period at the minimum term allowable under the statute and, by that action, considered the delay. *Moret II*, 504 N.W.2d at 453-45. And while that might have been an option for the district court here, we find this case distinguishable from the *Moret* series.[6] The IDOT had already suspended Moret's license for one and one-half years, and if the IDOT had initiated proceedings timely, the two IDOT suspensions would have run concurrently with the other. In contrast, Blomberg's alleged medically required suspension of her driving privileges did not relate to a sanction for her poor driving record and the State's purpose of keeping her off the road. Plus, given her driving record shows Blomberg incurred a citation for no driver's license in March 2016, it appears she did drive between 2015 and 2018, contrary to her claim. We do not find the decision of the IDOT to be "irrational, illogical, or wholly unjustifiable."

---

[6] Even under *Morets* analysis, the minimum revocation period would have reduced to a two-year term.

We agree that Blomberg did not meet her burden to establish prejudice from the delay.  We also find the laches doctrine did not prohibit the IDOT from revoking her license for three years.  Thus, we affirm.

**AFFIRMED.**