**James W. McCREA, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, Appellant.**

**No. 68959.**

Supreme Court of Iowa.

July 20, 1983.

Thomas J. Miller, Atty. Gen., J. Eric Heintz, Sp. Asst. Atty. Gen., and Michael C. Fitzgerald, Asst. Atty. Gen., for appellant.

Ervin E. Nordstrom, Sioux City, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON, and SCHULTZ, JJ.

McGIVERIN, Justice.

This appeal raises two basic questions under our implied consent law, Iowa Code ch. 321B (1981): (1) Whether the burden of proof in an administrative proceeding is on the driver's licensee to show compliance with the statute, and (2) whether substantial evidence exists to support the agency's finding of a refusal by the licensee to submit to chemical testing to determine the alcoholic content of his blood. On judicial review the district court placed the burden of proof on respondent Iowa Department of Transportation (DOT) and found that the record as a whole did not contain substantial evidence to support revocation of the nonresident operating privileges of petitioner James W. McCrea.[1] Because we conclude the district court erred, its ruling is reversed and the decision of the DOT, which revoked McCrea's operating privilege, is reinstated.

On April 19, 1981, McCrea was arrested for operating a motor vehicle while intoxicated. Iowa Code § 321.281. He was taken to the city hall in Correctionville, Iowa, where an implied consent form was read to

---

1. McCrea is a resident of Nebraska with a Nebraska driver's license. Under our implied consent law, an Iowa driver's license and the privilege of a nonresident to operate a motor vehicle in Iowa are treated the same.

him and a written request by a peace officer was made that he provide a urine sample. Iowa Code §§ 321B.3, .7.

Petitioner verbally consented to a urine test. The arresting officer accompanied McCrea to the restroom and asked him to urinate into a clean styrofoam cup. McCrea claimed he was unable to urinate, so the officer suggested that they complete the paper work before McCrea tried again to produce a specimen. During this time McCrea signed a written consent to provide a urine sample. Approximately 20–25 minutes later McCrea was requested, for the second time, to produce a specimen. The same procedure was followed and McCrea again claimed that he was unable to urinate.

The officer considered this a refusal to submit to the chemical test and invoked the implied consent procedure under section 321B.7.

Section 321B.7 provides in part as follows:

> If a person under arrest refuses to submit to the chemical testing, no test shall be given, but the director, upon the receipt of a sworn report of the peace officer that he or she had reasonable grounds to believe the arrested person to have been operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage, that he or she had placed such person under arrest for the offense of operating a motor vehicle while under the influence of an alcoholic beverage and that the person had refused to submit to the chemical testing, shall revoke his or her license or permit to drive and any nonresident operating privilege for a period of not less than one hundred twenty days nor more than one year; or if the person is a resident without a license or permit to operate a motor vehicle in this state, the director shall deny to the person the issuance of a license or permit within one year from the date of the alleged violation, subject to review as hereinafter provided....

In accordance with this section the peace officer made out a sworn report of the events surrounding McCrea's arrest and his refusal to submit to chemical testing. The director revoked petitioner's operating privileges upon receipt of the report.

McCrea requested an evidentiary hearing on the revocation of his operating privilege. Iowa Code § 321B.8. At the administrative hearing, Iowa Code § 17A.18(3), McCrea testified that he had attempted to urinate but "couldn't do it." And when asked for a second time for a specimen he "still couldn't go." Petitioner offered no other evidence concerning any physical inability to urinate. In fact, he said he had urinated over an hour before he was requested to provide a specimen. Petitioner's only evidence concerning possible psychological problems, which would prevent him from producing a specimen, was his testimony: "Well, I normally don't stand out front of somebody."

The hearing officer sustained the revocation of McCrea's operating privilege, and this decision was subsequently upheld by order of the director. McCrea sought judicial review of the agency decision. Iowa Code §§ 321B.9, 17A.19. The district court reversed the agency, and the DOT appealed.

I. *Burden of proof.* The DOT in substance found that McCrea had not met his burden of proving he had complied with sections 321B.3 and .7. On judicial review the district court concluded that the agency had erroneously shifted the burden of proof to the licensee. We disagree with the district court.

Administrative hearings under the implied consent law concerning revocation of the privilege to drive are provided for in section 321B.8. These hearings must be in accordance with the license revocation procedures outlined in Iowa Code section 17A.18(3). *See* Iowa Code § 17A.23 ("Except as expressly provided otherwise ... the requirements imposed by this chapter shall be in addition to those created or imposed by every other statute....").

Section 17A.18(3) provides that a licensee whose license is subject to revocation be *"given an opportunity to show,* in an

evidentiary hearing ..., *compliance* with all lawful requirements for the retention of the license." (Emphasis added.) In the context of the present case, section 17A.18(3) requires that McCrea be given an opportunity to show his compliance with the implied consent law. Therefore, we believe the burden of proof is on McCrea in this administrative proceeding.

We note also that the section 17A.18(3) burden of showing compliance is consistent with the burden of proof allocation placed on the driver's licensee in cases such as this prior to the enactment of chapter 17A. *Cf., Buda v. Fulton,* 261 Iowa 981, 985, 157 N.W.2d 336, 339 (1968) (burden of proof on licensee appealing revocation of license under implied consent statute); *see also* Iowa R.App.P. 14(f)(5) ("Ordinarily the burden of proof on an issue is upon the party who would suffer loss if the issue were not established.").

We hold that the DOT properly followed section 17A.18(3) in placing the burden of proof on McCrea to show his compliance with the implied consent law, ch. 321B, in order to retain his operating privilege. The district court erred in ruling otherwise.

■ II. *Substantiality of the evidence.* Our review of the agency's decision on the merits is governed by the "substantial evidence" rule of section 17A.19(8)(f): we determine if there is substantial evidence in the record as a whole to support the decision of the agency. *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 91 (Iowa 1982). We conclude that substantial evidence supports the DOT's decision to revoke McCrea's operating privilege. The district court erred in ruling to the contrary.

McCrea's operating privilege was revoked pursuant to section 321B.7 because of his refusal to submit to chemical testing. Any person who operates a motor vehicle under the conditions stated in section 321B.3 is deemed to have given implied consent to chemical testing. Section 321B.3 provides that

*Any person* who operates a motor vehicle in this state upon a public highway, under

such circumstances as to give reasonable ground to believe the person to have been operating a motor vehicle while under the influence of an alcoholic beverage, *shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof,* for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage, and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while under the influence of an alcoholic beverage. *The peace officer shall determine which of the four substances, breath, blood, saliva, or urine, shall be tested. Refusal to submit to a chemical test of urine, saliva or breath shall be deemed a refusal to submit,* and the provisions of section 321B.7 shall apply. A refusal to submit to a chemical test of blood shall not be deemed a refusal to submit, but in that case, the peace officer shall then determine which one of the other three substances shall be tested, and shall offer such test. If such peace officer fails to provide a test within two hours after such arrest, no test shall be required, and there shall be no revocation under the provisions of section 321B.7.

(Emphasis added.)

McCrea's main challenge to the DOT's decision to revoke his operating privilege is that his conduct did not constitute a refusal to submit to chemical testing. As stated above, McCrea has the burden of proving his compliance with the implied consent statutes. We will not interfere on judicial review unless we find that the licensee carried his burden as a matter of law. *Cf. Wilson v. Forty-O-Four Grand Corp.,* 246 N.W.2d 922, 925 (Iowa 1976) (standard in

law action tried to the court when recovery denied because of a party's failure to carry his burden on an issue).

Compliance with section 321B.7 is a question of fact for the fact finder. The licensee must produce sufficient evidence of compliance to convince the fact finder. One court found sufficient evidence based on a showing of medical inability by the licensee to comply. *Burson v. Collier,* 226 Ga. 427, 429, 175 S.E.2d 660, 662 (1970) (medical evidence of inability to complete breathalyzer test due to emphysema found to be sufficient).

McCrea's evidence of compliance, however, is minimal. He simply stated that he "couldn't do it," and as a reason for his inability asserted that he "normally [doesn't] stand out front of somebody." We believe the DOT could reasonably find that McCrea's evidence was inadequate to prove his compliance with section 321B.7.

We conclude it is not enough, as McCrea contends, that his subjective intentions were to comply with the officer's request. The determination of compliance must be based on objective standards: "[t]he licensee's words, acts, overall conduct and other manifestations of a willingness or unwillingness to take the [chemical] test will be considered...." *Hoban v. Rice,* 25 Ohio St.2d 111, 117, 267 N.E.2d 311, 315 (1971). McCrea was combative and belligerent when arrested and told the officer that "if he could urinate he would stand up on the table and urinate all over [the officer]." Thus the officer and the DOT director reasonably could have concluded that McCrea was refusing to provide a specimen in violation of section 321B.7.

In short, what McCrea is contending is that he can satisfy his burden of proof, as a matter of law, merely by showing (1) that he verbally consented to a chemical test and signed the consent form and (2) went through the motions of attempting to provide a specimen. We believe that legislative intent requires that something more be shown on the part of the licensee. As the hearing officer noted,

The plaintiff is the only party who can provide a specimen of urine. He is the only party who knows whether he is deliberately withholding a urine specimen or cannot provide the specimen as requested by the officers. The officer did a number of actions designed to assist the plaintiff in urinating [such as running water and flushing the toilets]. The plaintiff still did not provide a urine specimen. The only logical way to approach the issue is to determine what the results are from the failure to provide. *If drivers were allowed to withhold specimens that are requested by officers, then the intent of chapter 321B will be negated.* [*Taylor v. Department of Transportation,* 260 N.W.2d 521, 523 (Iowa 1977) (main objective of chapter 321B is to promote public safety by removing dangerous drivers from the highways).] In both breath and urine, the arrested party has complete control, within bodily limitations, of providing or failing to provide the specimen requested by the officer. The plaintiff is the only one who knows whether he is refusing or simply not providing the specimen.

(Emphasis supplied.)

Absent evidence sufficient to convince a fact finder of a licensee's inability to provide a specimen, we believe that compliance with the statute requires successful completion of the test. *Cf., Janson v. Fulton,* 162 N.W.2d 438 (Iowa 1968) (actions of licensee constituted a refusal to comply where he consented to urine test; he was given an empty bottle and asked to supply a specimen; licensee claimed "he couldn't go" but officer watching through open door saw him urinate and there was evidence of urine on his hands and shoes). Other states have reached the same general conclusion. *Miles v. Alexis,* 118 Cal.App.3d 555, 173 Cal.Rptr. 473 (1981) (as a matter of law licensee, who according to procedure voided his bladder and was unable to provide a urine specimen upon request 20 minutes later, failed to complete the test which constituted a refusal); *Pfeffer v. Department of Public Safety,* 136 Ga.App. 448, 221 S.E.2d 658 (1975) (failure to breathe deeply for breathalyzer

test due to sore throat for which licensee was receiving medical attention constituted a refusal to comply); *Woolman v. State,* 15 Wash.App. 115, 547 P.2d 293 (1976) (failure to blow hard enough for breathalyzer test constitutes a nonverbal act amounting to refusal in the absence of any showing of inability to comply); *but compare Burson,* 226 Ga. at 429, 175 S.E.2d at 662 (failure to complete breathalyzer test due to emphysema is not a refusal).

We hold that when the record is viewed as a whole, there is substantial evidence to support the decision of the DOT. The ruling of the district court is reversed and the decision of the DOT is reinstated.

REVERSED.