**HOPE EVANGELICAL LUTHERAN CHURCH, Appellant,**

v.

**IOWA DEPARTMENT OF REVENUE AND FINANCE, Appellee.**

No. 89–1300.

Supreme Court of Iowa.

Nov. 21, 1990.

Gerald L. Fatka of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Lucille M. Hardy, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, Hope Evangelical Lutheran Church (Hope), appeals from an adverse ruling of the district court. The district court affirmed the decision of the Iowa Department of Revenue and Finance (department), holding that the consumer use tax assessed against Hope is not in violation of the free exercise clauses of the United States and Iowa Constitutions; that the court is precluded from considering the issue of excessive governmental entanglement since Hope did not raise that issue before the department; that the use tax does not violate the freedom of the press provisions of the first amendment to the United States and Iowa Constitutions; that Hope fails to qualify for a use tax exemption under Iowa Code sections 422.45(3) and 423.4(4) (1977) because it did not show that its suppliers' gross receipts are derived from the sale of educational, religious, or charitable activities and that the entire proceeds therefrom are expended for educational, religious, or charitable purposes; and that Hope is not exempt from the use tax under Iowa Code sections 422.45(8) and 423.4(4) since it does not qualify as a private nonprofit educational institution as defined in 701 Iowa Administrative Code section 17.11. We affirm.

## I. *Background Facts and Proceedings.*

Hope Evangelical Lutheran Church, located in Cedar Rapids, Iowa, was assessed a consumer use tax for the period beginning October 1, 1978, and ending June 30, 1983, for consumer items it purchased from out-of-state, church-affiliated suppliers. The amount in controversy at the time of the assessment was $762.31, which includes tax, interest and fees. The department has waived any penalties that may apply.

On December 19, 1983, the department issued a notice of assessment relating to Hope's alleged consumer use tax liability for the period October 1978 through June 1983. This assessment reflects the department's determination, based upon its two-and-one-half day field audit of the church, that a consumer use tax was due from

Hope by reason of Hope's purchase of items for consumption or use from its out-of-state, church-affiliated suppliers for in-state use.

The tax portion of the assessment is based on Hope's use of a wide variety of consumer items, including: an oven, garbage bags, adhesive, lights, books, furnace filters, cleaners, supplies, salt, candles, wire, paint primer, paint supplies, battery, folding partition, cards, bulletins, towels, certificates, paper, cloth, publications, envelopes, home altars, credit memos, subscriptions, candle lighter, stencils, book capers, flower chart card, hood kit, coin collection, exam kit, forms, printing, roll kit, cradle roll, crosses, anniversary directories, lawn mower, pins, hymnal companion, word and witnesses materials and similar items, the majority of which were purchased from Fortress Church Supply Stores, Augsburg Publishing House and Concordia Publishing House. Hope filed a timely protest to the assessment with a hearing officer of the department on January 18, 1984.

On February 3, 1987, a hearing was held before a hearing officer. At the hearing Hope claimed exception from the use tax on the grounds that most of the items taxed were used for educational or religious purposes. Twelve items were conceded by Hope to be taxable because they were not used by the church for either worship purposes or educational purposes. These included lawn mowers, snowblowers, garbage bags, keys, batteries, paints, reupholstering, furnace filter, screws, anchors, belts and cleaners.

In testimony before the hearing officer, the department clearly enunciated its position that the tax was imposed on items used by the church including Bibles. David Casey, manager of the audit services section of the revenue department, testified as follows:

*Casey:* The State is imposing the tax on the use of the Bibles.

*Fatka* (attorney for Hope): And your feeling is that one of the uses of the Bible is reading the Bible?

*Casey:* My personal feeling is that, yes.

*Fatka:* Therefore in order for the church to read the Bible they have to pay the Iowa tax?

*Casey:* In order for the church to use the Bible they have to pay the Iowa tax.

In a proposed order, issued May 31, 1988, the hearing officer upheld the department's assessment for consumer use tax due. On June 20, 1988, Hope appealed the proposed order to the director of the department. The director affirmed the proposed order and adopted it in its entirety. Thereafter, on September 21, 1988, Hope filed a timely petition for judicial review of the director's order with the clerk of the district court for Linn County. The matter was then submitted to the Iowa District Court for Linn County on May 4, 1989, on the record made before the hearing officer, written briefs, and oral arguments. The district court issued its ruling on August 3, 1989, holding adversely to Hope and Hope appeals.

## II. *Scope of Review.*

This court may review the decision of the district court pursuant to Iowa Code section 17A.20 (1989) (administrative procedure act), which provides that:

An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

Furthermore, pursuant to Iowa Code section 17A.19(8) (1989):

The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

*a.* In violation of constitutional or statutory provisions;

*b.* In excess of the statutory authority of the agency;

. . . .

*e.* Affected by other error of law;

....

*g.* Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

■ Our scope of review is at law, not de novo, therefore we are limited to those issues considered in the record made before the department. *Board of Dental Examiners v. Hufford,* 461 N.W.2d 194, 198 (Iowa 1990); *Hearst Corp. v. Iowa Dep't of Revenue and Fin.,* 461 N.W.2d 295, 299 (Iowa 1990); *Hussein v. Tama Meat Packing Corp.,* 394 N.W.2d 340, 341 (Iowa 1986). Iowa Code section 17A.19 limits a district court's review to a determination of whether the agency committed any errors of law specified in subsection 8 of that section. To determine whether the district court properly exercised its power of judicial review, "this court applies the standards of section 17A.19(8) to the agency action to determine whether the court's conclusions are the same as those of the district court. If the conclusions are the same, affirmance is in order." *Jackson County Pub. Hosp. v. Public Employment Relations Bd.,* 280 N.W.2d 426, 429–30 (Iowa 1979). Therefore, "if we find that the agency's findings are supported by substantial evidence, we are bound by those findings." *Hufford,* 461 N.W.2d at 198.

### III. *Constitutional Challenges.*

■ At the outset we must recognize a presumption favoring the constitutionality of our state's taxing statutes. *Hearst Corp.,* 461 N.W.2d at 301. The rule is well settled in this court that a statute will not be declared unconstitutional unless it clearly, palpably and without doubt infringes the constitution. *Id.; Zilm v. Zoning Bd. of Adjustment,* 260 Iowa 787, 150 N.W.2d 606, 609 (1967). Moreover, a taxing statute will not be declared unconstitutional unless it is so clearly and plainly in contravention of the constitutional limitations and its guarantees as to leave no reasonable doubt as to its unconstitutionality. *See Vilas v. Board of Assessment and Review,* 223 Iowa 604, 607, 273 N.W. 338, 339–40, *ap-*

*peal dismissed,* 302 U.S. 637, 776, 58 S.Ct. 38, 136, 82 L.Ed. 496, 600 (1937). We have also said in various ways that every reasonable doubt must be resolved in favor of the constitutionality of a taxing statute. *See City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977); *Hansen v. Haugh,* 260 Iowa 236, 149 N.W.2d 169, 174 (1967).

Appellant Hope contends, however, that the assessment of the tax and the tax itself is barred by the first and fourteenth amendments to the Constitution of the United States and by the Constitution of Iowa.

### A. Free Exercise of Religion.

■ Hope's central contention is that the department's assessment of a consumer use tax on the church's use of the aforementioned consumer items contravenes first amendment strictures, made applicable to the several states by the fourteenth amendment, to "make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The Constitution of the State of Iowa similarly provides in stating that:

> The General Assembly shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; nor shall any person be compelled to attend any place of worship, pay tithes, taxes, or other rates for building or repairing places of worship, or the maintenance of any minister, or ministry.

Iowa Const. Art. I, § 3.

The United States Supreme Court has stated:

> The general principle deductible from the First Amendment and all that has been said by the Court is this: that we will not tolerate either governmentally established religion or governmental interference with religion. Short of those expressly proscribed governmental acts there is room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference.

*Walz v. Tax Comm'n of City of New York,* 397 U.S. 664, 669, 90 S.Ct. 1409, 1411–12, 25 L.Ed.2d 697, 702 (1970).

The Court has also stated that the free exercise clause "withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority." *Abington School Dist. v. Schempp*, 374 U.S. 203, 222–23, 83 S.Ct. 1560, 1571–72, 10 L.Ed.2d 844, 858 (1963). In fact, "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Wisconsin v. Yoder*, 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15, 28 (1972) (citations omitted). Furthermore, the Supreme Court has established that "[t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, ——, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766, 785 (1989) (citations omitted).

Recently, the Court examined the free exercise clause in relation to an Oregon criminal statute as applied to the use of Peyote in a religious rite. Examples of first amendment violations were given. "The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Employment Div., Dep't of Human Resources v. Smith*, —— U.S. ——, ——, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876, 884 (1990) (citations omitted).

Hope relies almost exclusively on the Supreme Court's decisions in *Follett v. Town of McCormick*, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944); *Jones v. City of Opelika*, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); and *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), for the proposition that a state may not impose a sales or use tax on consumer items purchased by a church to be used or employed in connection with religious activities. Hope argues that the department's assessment of the use tax burdens its free exercise of religion in a manner analogous to that in which the Evangelists in *Follett, Jones* and *Murdock* were burdened.

In a similar case, *Jimmy Swaggart Ministries v. Board of Equalization*, —— U.S. ——, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990), the Court rejected expansive readings of *Follett, Jones* and *Murdock* as contrary to the decisions themselves. In both *Jones* and *Murdock*, the Court considered the constitutionality of a city ordinance requiring all persons canvassing or soliciting within the city to procure a license by paying a flat fee. In reversing the convictions of the Jehovah's Witnesses convicted under the ordinances for soliciting and distributing religious literature without a license, the Court explained that:

The hand distribution of religious tracts is an age-old form of missionary evangelism—as old as the history of printing presses. It has been a potent force in various religious movements down through the years. This form of evangelism is utilized today on a large scale by various religious sects whose colporteurs carry the Gospel to thousands upon thousands of homes and seek through personal visitations to win adherents to their faith. It is more than preaching; it is more than distribution of religious literature. It is a combination of both. Its purpose is as evangelical as the revival meeting. This form of religious activity occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits.

*Murdock*, 319 U.S. at 108–09, 63 S.Ct. at 872–73, 87 L.Ed. at 1296 (footnotes omitted). Accordingly, the Supreme Court held that "spreading one's religious beliefs or preaching the Gospel through distribution of religious literature and through personal visitations is an age-old type of evangelism with as high a claim to constitutional protection as the more orthodox types." *Id.* at 110, 63 S.Ct. at 873, 87 L.Ed. at 1297; *see*

also *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).

The Court's decisions in these cases resulted from the particular nature of the challenged taxes, that is, flat license taxes that operated as a prior restraint on the exercise of religious liberty. The Court emphasized that the tax at issue was "a license tax—a flat tax imposed on the exercise of a privilege granted by the Bill of Rights," *Murdock*, 319 U.S. at 113, 63 S.Ct. at 875, 87 L.Ed. at 1298, and cautioned that they did "not mean to say that religious groups ... are free from all financial burdens of government." *Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660, 668 (1936). The Court also stated that while it is one thing to impose a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities, it is quite another thing to exact a tax for the privilege of delivering a sermon. *Murdock*, 319 U.S. at 112, 63 S.Ct. at 874, 87 L.Ed. at 1298. In *Follett*, the Court reiterated that a preacher is not free from all financial burdens of government, including taxes on income or property and, like other citizens, may be subject to general taxation. *Id.*, 321 U.S. at 578, 64 S.Ct. at 719, 88 L.Ed. at 940. The thrust of these cases is analyzed in *Jimmy Swaggart Ministries* as follows:

> Significantly, we noted in both [*Murdock* and *Follett*] that a primary vice of the ordinances at issue was that they operated as prior restraints of constitutionally protected conduct:
>
>> "In all of these cases [in which license taxes have been invalidated] the issuance of the permit or license is dependent on the payment of a license tax. And the license tax is fixed in amount and unrelated to the scope of the activities of petitioners or to their realized revenues. It is not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question. It is in no way apportioned. It is a flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the first amendment. Accordingly, *it restrains in advance those constitutional liberties of press and religion and inevitably tends to suppress their exercise.* That is almost uniformly recognized as the inherent vice and evil of this flat license tax."
>
> ... Our concern in *Murdock* and *Follett*—that a flat license tax would act as a *precondition* to the free exercise of religious beliefs—is simply not present where a tax applies to all sales and uses of tangible personal property in the State.
>
> ....
>
> ... California's generally applicable sales and use tax is not a flat tax, represents only a small fraction of any retail sale, and applies neutrally to all retail sales of tangible personal property made in California. California imposes its sales and use tax even if the seller or the purchaser is charitable, religious, nonprofit, or state or local governmental in nature. Thus, the sales and use tax is not a tax on the right to disseminate religious information, ideas, or beliefs *per se;* rather, it is a tax on the privilege of making retail sales of tangible personal property and on the storage, use, or other consumption of tangible personal property in California. For example, California treats the sale of a bible by a religious organization just as it would treat the sale of a bible by a bookstore; as long as both are in-state retail sales of tangible personal property, they are both subject to the tax regardless of the motivation for the sale or the purchase. There is no danger that appellant's religious activity is being singled out for special and burdensome treatment.

*Id.*, —— U.S. at ——, 110 S.Ct. at 694–96, 107 L.Ed.2d at 807–09 (citations omitted).

In addition, this court notes that the appellant's free exercise claim is also in significant tension with the Supreme Court's decision last term in *Hernandez*, 490 U.S. at —— – ——, 109 S.Ct. at 2148–49, 104 L.Ed.2d at 785–87 (1989), in which the Court held that the government's disallowance of a tax deduction for religious "audit-

ing" and "training" services did not violate the free exercise clause. The Court in *Hernandez* reasoned that:

> Any burden imposed on auditing or training therefore derives solely from the fact that, as a result of the deduction denial, adherents have less money to gain access to such sessions. This burden is no different from that imposed by any public tax or fee; indeed, the burden imposed by the denial of the "contribution or gift" deduction would seem to pale by comparison to the overall federal income tax burden on an adherent.

*Id.* at ——, 109 S.Ct. at 2149, 104 L.Ed.2d at 786.

There is no evidence in this case that the payment of the consumer use tax violates Hope's sincere religious beliefs. Iowa's nondiscriminatory sales and use tax law requires only that the taxpayer remit to the state the use tax due on consumer items it purchases from its out-of-state, church-affiliated suppliers for its in-state use. The only burdens on Hope in this case are a slight reduction of funds available to it for the purchase of consumer items and the costs associated with administering this generally-applicable tax. The Court has made it clear that to the extent that imposition of a generally-applicable tax merely decreases the amount of money a taxpayer has to spend on its religious activities, any such burden is not constitutionally significant. *See Jimmy Swaggart Ministries,* — U.S. at ——, 110 S.Ct. at 696, 107 L.Ed.2d at 809; *Hernandez,* 490 U.S. at ——, 109 S.Ct. at 2149, 104 L.Ed.2d at 786; *See also Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (plurality opinion). Though we do not doubt the economic cost to Hope of complying with a generally-applicable sales and use tax, compliance with such a tax is no different from compliance with other generally-applicable laws and regulations, such as health and safety regulations, to which the taxpayer must adhere.

We conclude, therefore, that the assessment and required payment of the generally-applicable consumer use tax in this case imposes no constitutionally significant burden on appellant's religious practices or beliefs. The free exercise clause accordingly does not require this state to grant the appellant an exemption from its generally-applicable sales and use tax.

### B. Freedom from Excessive Governmental Entanglement.

█ Hope also contends that application of the consumer use tax to its use of personal property violates the establishment clause of the United States and Iowa Constitutions because it fosters an excessive government entanglement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745, 756 (1971).

The district court found, as do we, that this contention was not raised or argued before the department's hearing officer. Since there is no establishment clause evidence in the record, this court will not consider those arguments now. *Kartridg Pak Co. v. Department of Revenue,* 362 N.W.2d 557, 561 (Iowa 1985). We note, however, that the California sales and use tax reviewed in *Jimmy Swaggart Ministries* involved no excessive entanglement between government and religion. The Court there said:

> The fact that appellant must bear the cost of collecting and remitting a generally applicable sales and use tax—even if the financial burden of such costs may vary from religion to religion—does not enmesh government in religious affairs. Contrary to appellant's contentions, the statutory scheme requires neither the involvement of state employees in, nor onsite continuing inspection of, appellant's day-to-day operations. There is no "official and continuing surveillance" by government auditors. The sorts of government entanglement that we have found to violate the Establishment clause have been far more invasive than the level of contact created by the administration of neutral laws.

*Id.,* — U.S. at ——, 110 S.Ct. at 699, 107 L.Ed.2d at 813 (citations omitted).

### C. Freedom of the Press.

The first amendment to the Constitution of the United States provides that "Con-

gress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I. Section 7 of article I of the Iowa Constitution similarly provides. The language of the first amendment clearly does not prohibit all regulation of the press. *Minneapolis Star & Tribune v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). In fact, it is beyond dispute that some publications may be subjected to generally-applicable economic regulations by the state and the federal government without creating constitutional problems. *Id.* at 581, 103 S.Ct. at 1369, 75 L.Ed.2d at 302. Problems arise, however, when a "discriminatory tax on the press burdens rights protected by the first amendment." *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227, 107 S.Ct. 1722, 1726, 95 L.Ed.2d 209, 218 (1987) (footnote omitted).

■ It is Hope's contention that Iowa's imposition of an excise tax on the use of Bibles, books and other written materials has a chilling effect on the church's right to freedom of the press. We find otherwise.

This court recently held in *Hearst Corp.* that the Iowa structure does not create a special tax that applies only to certain publications protected by the first amendment, nor is it tailored in such a way that it singles out and targets small groups of publications. *Id.* at 302. Iowa's tax is a generally-applicable retail sales tax whereby gross receipts from retail sales of tangible personal property are taxed. *See* Iowa Code § 422.43 (1977). In addition, to reach those retail sales that cannot be subjected to state sales tax, Iowa imposes a complementary generally-applicable retail use tax whereby the use in Iowa of tangible personal property is taxed. *See* Iowa Code § 423.4 (1977); *Dain Mfg. v. Iowa State Tax Comm'n*, 237 Iowa 531, 534, 22 N.W.2d 786, 788 (1946). Thus, while there are a number of sales and use tax exemptions in Iowa, *see generally* Iowa Code § 422.43, most retail transactions involving tangible personal property for use or consumption in the State of Iowa are taxed. *See Lee Enters., Inc. v. Iowa State Tax*

*Comm'n*, 162 N.W.2d 730, 754–55 (Iowa 1969) (holding that Iowa sales and use tax law, as amended, is of general application). The only deviation from this general scheme of taxation is that newspapers and free shoppers guides are granted an exemption from the tax, while other publications are not. Since the tax does not target any small groups of publishers, either directly or indirectly, the tax satisfies the standards set by the Supreme Court in *Minneapolis Star*. *Hearst Corp.*, 461 N.W.2d at 302–03.

In reference to its decision in *Minneapolis Star*, the Court stated in *Jimmy Swaggart Ministries* that "[i]ndeed, our cases have consistently recognized that nondiscriminatory taxes on the receipts or income of newspapers would be permissible." *Id.*, — U.S. at —, 110 S.Ct. at 695, 107 L.Ed.2d at 808 (quoting *Minneapolis Star*, 460 U.S. at 587 n. 9, 103 S.Ct. at 1373 n. 9, 75 L.Ed.2d at 305 n. 9 (citations omitted)).

A comparison of first amendment rights concerning religion and the press was made this year by the Court in *Smith* as follows:

It is no more necessary to regard the collection of general tax, for example, as "prohibiting the free exercise [of religion]" by those citizens who believe support of organized government to be sinful, than it is to regard the same tax as "abridging the freedom ... of the press" of those publishing companies that must pay the tax as a condition of staying in business. It is a permissible reading of the text, in the one case as in the other, to say that if prohibiting the exercise of religion (or burdening the activity of printing) is not the object of the tax but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended.

*Id.*, — U.S. at —, 110 S.Ct. at 1599–1600, 108 L.Ed.2d at 885 (citations omitted).

Hope has failed to cite any authority in support of its proposition that Iowa's consumer use tax has a chilling effect on a church's right to freedom of the press. We agree with the department that Hope has

not been denied any of its constitutional rights under the freedom of speech and press clauses to the United States and Iowa Constitutions.

### IV. Use Tax Exemptions Under the Code.

701 Iowa Administrative Code section 17.1(4) states in relevant part that:

> a. There is no authority in the Iowa Code to grant a nonprofit corporation any type of blanket sales or use tax exemption on its purchases because the organization is exempted from federal or state income taxes.
>
>  . . . .
>
> c. · Nonprofit corporations and educational, religious, or charitable organizations can be held responsible for the payment of sales and use taxes as would any other individual, retailer, or corporation.

Therefore, all nonprofit organizations not specifically exempted from the payment of sales or use tax based solely on the nature of their organization can be held accountable for the payment of such a tax on their purchases as would any other individual, retailer, or corporation unless the purchases fall directly under a specific exemption statute. Hope contends that Iowa Code sections 422.45(3), 422.45(8) and 423.4(4) (1977) grant it such an exemption.

Iowa Code section 422.45 provides in part that:

> There are hereby specifically exempted from the provisions of this division and from the computation of the amount of tax imposed by it, the following:
>
>  . . . .
>
> 3. The gross receipts from sales of educational, religious, or charitable activities, where the entire proceeds therefrom are expended for educational, religious, or charitable purposes, . . . .
>
>  . . . .
>
> 8. The gross receipts of all sales of goods, wares, or merchandise, or services, used for educational purposes to any private nonprofit educational institution in this state. . . .

Likewise, the "use" of such tangible personal property is exempt from Iowa use tax by virtue of Iowa Code section 423.4(4), which also provides in part that:

> The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter:
>
>  . . . .
>
> 4. Tangible personal property, the gross receipts from the sale of which are exempted from the retail sales tax by the terms of section 422.45. . . .

When interpreting statutes, we are guided by familiar principles of statutory construction. Of course, the polestar is legislative intent. *Iowa Dep't of Revenue v. Iowa Merit Employment Comm'n*, 243 N.W.2d 610, 614 (Iowa 1976). Our goal then, is to ascertain that intent and, if possible, give it effect. *Isaacson v. Iowa State Tax Comm'n*, 183 N.W.2d 693, 695 (Iowa 1971). To ascertain the intent of the legislature, we look to what it said, rather than what it should or might have said. *State v. Hesford*, 242 N.W.2d 256, 258 (Iowa 1976). Words are given their ordinary meaning unless defined differently by the legislature or possessed of a particular and appropriate meaning in law. *Id.* However, we must avoid legislating in our own right and placing upon statutory language a strained, impractical or absurd construction. *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977).

Administrative rules have the force of law and are presumed valid. *Richards v. Iowa Dep't of Revenue*, 360 N.W.2d 830, 833 (Iowa 1985). Weight should be given to the department's interpretation of the statutes, particularly when they are of long standing, but this court is not bound by that interpretation. *Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 473 (Iowa 1983). Moreover, we must strictly construe exemption statutes and any doubts must be resolved against the exemption and in favor of taxation. *American College Testing Program, Inc. v. Forst*, 182 N.W.2d 826, 827 (Iowa 1970).

### A. The Section 422.45(3) Exemption.

Tangible personal property is exempt from Iowa use tax where the entire

proceeds from sales of educational, religious, or charitable activities are expended for educational, religious, or charitable purposes. *See* Iowa Code §§ 422.45(3), 423.-4(4) (1977). The Iowa Administrative Code lists criteria to test whether activities are educational, religious, or charitable, *see* 701 Iowa Admin.Code §§ 17.1(1)(a)-(c), and whether the entire proceeds are expended for such purposes. *See* 701 Iowa Admin. Code § 17.1(2).

Hope contends that the department erred in assessing a use tax against the church for items purchased by it from Fortress Church Supply Stores, Augsburg Publishing House, Concordia Publishing House, The Lutheran Magazine and The Lutheran Church in America because the entire proceeds from their sale of educational, religious, or charitable activities are expended for educational, religious, or charitable purposes. The claim is that because the sellers of the items sought to be taxed are not-for-profit corporations that use their profits for religious activities, they come within the parameters of the sales tax statutory exemption and perforce include Hope within the use tax exemption. Our review shows that Hope has not supported its proposition with legal authority and has also failed to provide sufficient factual data to prove its underlying premise. The only evidence offered by Hope in support of its position is the testimony of its pastor and three affidavits from officials of Hope's major suppliers.

Hope did not meet its burden of proof in establishing its right to an exemption from Iowa's use tax under Iowa Code sections 422.45(3) and 423.4(4). Pursuant to these Code sections and 701 Iowa Administrative Code sections 17.1(1) and (2), Hope must show that the organization's activities are educational, religious, or charitable, and that the entire proceeds therefrom are in fact expended for such purposes. The evidence in this regard does not show how Hope has met these standards. Affidavits which merely state conclusions with no supporting documents or records cannot sustain Hope's burden. Additionally, even if the gross receipts of these suppliers could be considered to be from the sale of educational, religious, or charitable activities, the department was correct in holding that Hope did not meet its burden to establish the right to a use tax exemption under Iowa Code sections 422.45(3) and 423.4(4), since it failed to show with particularity how the entire proceeds were expended by its suppliers.

B. The Section 422.45(8) Exemption.

■ Tangible personal property used for educational purposes by a private Iowa nonprofit educational institution is exempt from the state's use tax. *See* Iowa Code §§ 422.45(8) and 423.4(4). Iowa Code section 422.45(8) provides an exemption for the gross receipts of all sales of goods, wares, or merchandise, or services, used for educational purposes to any private nonprofit educational institution in Iowa. A "private nonprofit educational institution" is defined in 701 Iowa Administrative Code section 17.11 as follows:

[A] school, college, or university with students, faculty, and an established curriculum, a group of qualifying organizations acting in concert, or libraries.

*See also American College Testing Program*, 182 N.W.2d at 827.

Hope contends that it meets this definition of a private nonprofit educational institution because it has students, faculty, and an established curriculum. The department, on the other hand, contends that Hope provides religious instruction as a normal consequence of being a religious organization and does not qualify as a private nonprofit educational institution for purposes of the Iowa Code section 422.45(8) use tax exemption.

We cannot construe the exemption strictly and include Hope within the term "educational institution." To do so would place a strained, impractical or absurd construction upon the statute in contravention to our own principles of statutory construction. *Doe*, 251 N.W.2d at 501.

Hope cites our case of *Community Drama Association v. Iowa State Tax Commission*, 252 Iowa 854, 862, 109 N.W.2d 23, 28 (1961), in support of its proposition that many jurisdictions have accepted a broad

meaning of the term "educational institution." In *Community Drama*, this court held that a community theater was engaged in educational activities which qualified for an exemption from sales tax. *Id.* We noted, however, that the determination of what are "educational activities" is a factual problem not amenable to an all-inclusive rule. *Id.*

There is a distinction between being engaged in educational activities for educational purposes and educational institutions. Concededly Hope's activities are somewhat related to an educational process, but this fact alone does not qualify it as an "educational institution."

The evidence in this case does not show that Hope qualifies as an "educational institution" for purposes of an Iowa Code section 422.45(8) tax exemption as defined in 701 Iowa Administrative Code section 17.11 and *American College Testing Program.*

Hope is a church. As a natural consequence thereof, Hope provides religious instruction for such things as Sunday school, vacation Bible school and confirmation. Hope has no educational requirements which must be met by any of its instructors prior to instructing. The instructors make their own decisions about course material with apparently no established guidelines or set progressive curriculum for each year. In fact, the adult students choose their own material. Such a loose arrangement does not meet the standards of a 701 Iowa Administrative Code section 17.11 private nonprofit educational institution.

Since Hope did not meet its burden to show that it qualifies as a "private nonprofit educational institution" within the meaning of Iowa Code section 422.45(8) (1977), it is not entitled to an exemption under that section.

AFFIRMED.