**John Jay FURRY, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.**

**No. 90–94.**

Supreme Court of Iowa.

Jan. 23, 1991.

Thomas J. Miller, Atty. Gen., Charles J. Krogmeier, Deputy Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellant.

Joseph J. Bitter, Dubuque, for appellee.

Max Schott, Des Moines, for amicus curiae, Iowa Civil Liberties Union Foundation.

SNELL, Justice.

This appeal by the Iowa Department of Transportation (DOT) arises out of an adverse ruling in a judicial review action. The question here is whether, under Iowa Code section 321J.9 (1989), actual operation of a motor vehicle is a prerequisite to license revocation for chemical test refusal. We conclude that it is and therefore affirm the district court's ruling reversing the DOT's license revocation decision.

The facts are essentially uncontested. On or about June 23, 1989, two Dubuque police officers stopped a vehicle whose oc-

cupants fled on foot. One of the occupants, plaintiff, John Jay Furry (Furry), was apprehended by one of the officers after a foot pursuit. The officers believed Furry to have been the driver of the vehicle, but Furry has consistently contended he was not the driver.

After his apprehension, Furry was transported to the Dubuque Law Center where officers sought to perform chemical tests to determine blood alcohol content. Furry refused to permit chemical testing. The officers then invoked the procedures of the implied consent statute. Furry's driver's license was revoked for chemical test refusal.

Furry later requested and received an administrative hearing to contest the revocation of his driver's license. At the hearing, Furry testified that he was not in fact the driver of the vehicle. To corroborate Furry's story, another witness, Ross Robert Simpson, testified that he (Simpson) was in fact the driver of the vehicle at the time it was stopped by the police. The administrative law judge (ALJ), persuaded by Simpson's testimony, found that, although the police officers had reasonable grounds to believe that Furry was operating while intoxicated, Furry was not in fact the actual operator of the vehicle at the time it was stopped. Coupling the fact that Furry was not the actual operator of the vehicle, with the language of section 321J.9, the ALJ determined that a driver's license cannot be revoked for chemical test refusal unless the licensee is actually operating the vehicle. On this basis the revocation of Furry's license was rescinded.

On administrative appeal, the DOT reversed the proposed decision of the ALJ. The DOT accepted the factual findings made by the ALJ but determined, as a matter of law, that actual operation of a vehicle is not a prerequisite for license revocation. The agency determined that the requirement is that the arresting officer only have "reasonable grounds" to believe that the licensee has been operating while intoxicated, and that requirement is satisfied in this case. Therefore, the final deci-

sion of the agency was to revoke Furry's license for chemical test refusal.

Furry brought a timely judicial review action in Dubuque County District Court seeking a reversal of the agency's final decision to revoke his license. After hearing, the district court determined that, as a matter of law, actual operation of the vehicle is a prerequisite for chemical test refusal and, therefore, reversed the DOT's license revocation decision. The DOT now appeals that judicial determination.

This court may review the decision of the district court pursuant to Iowa Code section 17A.20 (1989) (administrative procedure act) which provides that:

An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

*See also Hearst Corp. v. Iowa Dep't of Revenue & Fin.*, 461 N.W.2d 295, 299 (Iowa 1990). Pursuant to Iowa Code section 17A.19(8) (1989):

The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal, and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

*a.* In violation of constitutional or statutory provisions;

. . . .

*e.* Affected by other error of law;

■ Our scope of review is at law, not de novo, therefore, we are limited to those issues considered in the record made before the agency. *See, e.g., Hope Evangelical Lutheran Church v. Iowa Dep't of Revenue & Fin.*, 463 N.W.2d 76 (Iowa 1990). Iowa Code section 17A.19 limits a district court's review to a determination of whether the agency committed any errors of law specified in subsection 8 of that section. Thus, to determine whether the district

court properly exercised its power of judicial review,

this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court. If the conclusions are the same, affirmance is in order. If they are not, reversal may be required.

*Jackson County Pub. Hosp. v. PERB*, 280 N.W.2d 426, 429–30 (Iowa 1979). If we find that the agency's findings are supported by substantial evidence, we are bound by those findings. *Board of Dental Examiners v. Hufford*, 461 N.W.2d 194, 198 (Iowa 1990).

The crime of operating while intoxicated is codified in Iowa Code chapter 321J (1989). Relevant to the outcome of the present case are subsections 321J.2, 321J.6, and 321J.9 (1989). Those sections provide in part as follows:

**321J.2 Operating while under the influence of alcohol or a drug or while having an alcohol concentration of .10 or more. (OWI).**

1. A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state in either of the following conditions:

*a.* While under the influence of an alcoholic beverage or other drug or a combination of such substances.

*b.* While having an alcohol concentration as defined in section 321J.1 of .10 or more.

**321J.6 Implied consent to test.**

1. A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section....

**321J.9 Refusal to submit—revocation.**

If a person refuses to submit to the chemical testing, a test shall not be given, but the department, upon the receipt of the peace officer's certification, subject to penalty for perjury, that the officer had reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321J.2, that specified conditions existed for chemical testing pursuant to section 321J.6, and that the person refused to submit to the chemical testing, shall revoke the person's motor vehicle license....

A number of well-established principles of statutory construction guide our resolution of this controversy.

Of course, the polestar is legislative intent. Our goal then, is to ascertain that intent and, if possible, give it effect. To ascertain the legislative intent we must look to what the legislature said, rather than what it should or might have said. Words are given their ordinary meaning unless defined differently by the legislature or possessed of a particular and appropriate meaning in law. However, we must avoid legislating in our own right and placing upon statutory language a strained, impractical or absurd construction. Weight should be given to the department's interpretation of the statutes, particularly when they are of long standing, but the court is not bound by that interpretation.

*Hearst Corp.*, 461 N.W.2d at 299–300 (citations omitted).

The DOT advances several arguments in support of its theory of interpretation. It points to the statutory language itself as evidence that the requirement is only that the officer had reasonable cause to believe the person to have been operating a motor vehicle in violation of section 321J.2. No specific requirement is set out in the statute that the licensee be actually driving the motor vehicle. In further support, the DOT refers to section 321J.13(2) which limits the scope of the revocation hearing to the reasonable cause to believe element. Reading chapter 321J as a whole shows that the legislature was vitally interested in promoting public safety, which the DOT contends is advanced by their proposed in-

terpretation and hobbled by that of appellee Furry. The DOT interpretation requires cooperation by every licensee in curtailing drunk drivers and would prevent a guilty driver from evading punishment by denying being the driver. Finally, the DOT argues that deference should be shown to the agency's interpretation of the law.

We have addressed various questions of interpretation of chapter 321J but not this specific one. We note, however, that our cases have used language assuming a licensee charged was the driver. In *Mary v. Iowa Department of Transportation*, 382 N.W.2d 128, 131 (Iowa 1986), we said:

A person who operates a motor vehicle under circumstances in which there are reasonable grounds to believe that the person has been driving while under the influence of alcohol, is deemed to have consented to the withdrawal of certain body substances from him or her for chemical testing of alcohol concentration.

"Any person who operates a motor vehicle under the conditions stated in section 321B.3 is deemed to have given implied consent to chemical testing." *McCrea v. Iowa Dep't of Transp.*, 336 N.W.2d 427, 429 (Iowa 1983). Similarly, in *Veach v. Iowa Department of Transportation*, 374 N.W.2d 248, 250 (Iowa 1985), we said: Chapter 321B is based on the premise "that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways." Iowa Code chapter 321B is the predecessor of chapter 321J. *See also McDowell v. Iowa Dep't of Transp.*, 356 N.W.2d 234, 236 (Iowa App. 1984).

Of some significance also is the definition of "operator" contained in chapter 321, the chapter that sets out the bulk of our statutory law on motor vehicles and the law of the road. That definition states: "'operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." Iowa Code § 321.1(42) (1989).

Section 321J.6 that requires a consent to test by every licensee commences its statement of the law with the words "a person who operates a motor vehicle in this state."

A maxim of statutory construction long approved is that the express mention of one thing implies the exclusion of others. *See Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 899 (Iowa 1986). The reference to "a person who operates" would thus exclude one who does not operate a motor vehicle. We think the DOT position ignores the premise from which the legislation proceeds.

In distinguishing a criminal prosecution for OMVUI we said that the issue there is whether the person charged was in fact operating a motor vehicle while under the influence of an alcoholic beverage. In the revocation proceeding the issue is whether the officer had reasonable grounds to believe the person was operating a motor vehicle while under the influence of an alcoholic beverage. *Saunders v. Commissioner of Pub. Safety*, 226 N.W.2d 19, 22 (Iowa 1975). *Cf. Benning v. Iowa Dep't of Transp.*, 441 N.W.2d 372, 373 (Iowa 1989) (Snell, J., concurring specially.) Even though we agree with this distinction we do not find that the issue of who was the driver is thereby foreclosed in the administrative hearing.

In *McCrea*, we considered the question of where the burden of proof lies in a revocation hearing. We noted that section 17A.18(3) provides a licensee whose license is subject to revocation be "given an opportunity to show, in an evidentiary hearing compliance with all lawful requirements for the retention of the license." We held that the burden of proof is on the licensee to show his compliance with the implied consent law in order to retain his operating privilege. Included in that showing should be the right to show compliance by proving nondriving of the vehicle.

■ While the approach by the DOT to effect maximum protection of the public from drunk drivers is commendable, we find its proposed reach of the statutes is too far. We do not believe the legislative scheme was intended to approve a blinding to the truth as to who was the actual offender. Otherwise, an innocent passenger would lose his or her operator's license

through the good faith error of an officer, uncorrectable in fact or law.

The agency's findings of fact are that Furry was not the actual driver of the vehicle in this case. Although as a general rule we give deference to an administrative agency's interpretation of a statute that it administers, it is our responsibility as well to correct an error of law. *See Bishop v. Iowa State Bd. of Pub. Instruction,* 395 N.W.2d 888, 892 (Iowa 1986); Iowa Code § 17A.19(8)(b), (e). This was made by the agency at the administrative appeal level which reversed the decision of the administrative law judge. We hold that sections 321J.6 and 321J.9 do not apply to a licensee who proves that he or she was not the driver of the motor vehicle involved in the inquiry relevant therein. The district court was correct; its decision is affirmed.

AFFIRMED.

All Justices concur except CARTER, LARSON and SCHULTZ, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent.

It is tempting to approve a procedure for rescinding the consequences of chemical test refusal where an officer's reasonable belief that a person has been driving while under the influence of an intoxicant later proves to have been mistaken. However, the statutory scheme does not authorize such relief.

The issue in the present case is similar to the one presented in *Benning v. Iowa Department of Transportation,* 441 N.W.2d 372 (Iowa 1989). In that case, the person whose license had been revoked under section 321J.9 for refusing to submit to a chemical test had obtained a privately administered blood test within the permissible time for chemical testing. That test revealed a blood alcohol concentration of only .043. Notwithstanding this fact, the district court and the court of appeals concluded that, if the officer had reasonable grounds to believe that the subject had been operating while intoxicated at the time of requesting the chemical test, a li-

cense revocation for refusing the test could not later be rescinded based on proof that the officer had been mistaken.

The court of appeals in *Benning* reversed the agency on another ground. On that issue, we disagreed with the court of appeals and ultimately affirmed the district court's ruling refusing to allow the revocation to be rescinded. In so doing, we necessarily approved the legal conclusion of the district court and the court of appeals on the controlling question of statutory interpretation.

The claim made in the present case is that a license cannot be revoked under section 321J.9 if the licensee was not *in fact* driving the automobile. This is no more persuasive than the argument in *Benning* that a revocation should not be allowed to stand if the licensee was not in fact intoxicated or under the influence while operating a motor vehicle. This court observed in *Saunders v. Commissioner of Public Safety,* 226 N.W.2d 19 (Iowa 1975), that:

> The question of whether plaintiff was *in fact* operating a motor vehicle while under the influence of an alcoholic beverage, the major issue in a criminal prosecution for O.M.V.U.I. ... is not an issue in this civil proceeding.... The issue presented here is whether [the officer] had "reasonable grounds" to believe plaintiff was operating a motor vehicle while under the influence of an alcoholic beverage.

*Id.* at 22.

In the present case, the majority concedes that the officer had reasonable grounds to believe that Mr. Furry had been operating a motor vehicle while intoxicated at the time the chemical test was requested. That is all that the statute requires in order to sustain a license revocation under section 321J.9. The majority seeks to avoid the plain language of this statute by borrowing language from section 321J.6. The opinion suggests that none of the implied consent law provisions can be applied unless the person affected was in fact operating a motor vehicle in that particular instance. This conclusion is flawed.

A more realistic interpretation of section 321J.6 is that it puts licensees on notice that, by obtaining an operator's license in this state, they impliedly consent to chemical testing when they give an officer reasonable grounds to believe that they were driving while intoxicated. This interpretation harmonizes section 321J.6 with section 321J.9 and is consistent with the manner in which courts from other jurisdictions have interpreted similar language. *See State v. Neitzel*, 95 Wis.2d 191, 194, 289 N.W.2d 828, 830 (1980) (A driver who applies for and receives an operator's license submits to the legislatively imposed conditions of consenting to chemical testing in accordance with statutory requirements.); *Langfield v. Department of Pub. Safety*, 449 N.W.2d 738 (Minn.App.1990) (it is the privilege of operating a motor vehicle which triggers regulations under implied consent theory).

For the reasons stated, I would reverse the district court's decision and uphold the decision of the agency.

LARSON and SCHULTZ, JJ., join this dissent.